UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEXTER DAVENPORT,<br><br>                    Plaintiff,<br><br>    -against-<br><br>HOUSTON WIRE & CABLE COMPANY, G. GARY YETMAN, JAMES L. POKLUDA III, ROY W. HALEY, MARGARET S. LAIRD, WILLIAM H. SHEFFIELD, SANDFORD W. ROTE, and DAVID NIERENBERG,<br><br>                    Defendants. | CASE NO.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

      Plaintiff Dexter Davenport ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

      1.     This is an action brought by Plaintiff against Houston Wire & Cable Company ("Houston Wire" or the "Company") and members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Houston Wire, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and for breaching their fiduciary duty of candor. Plaintiff's claims arise in connection with the proposed merger between the Company and Omni Cable, LLC ("Omni Cable") and its subsidiaries (the "Proposed Transaction").

1

2. On March 24, 2020, Houston Wire entered into an Agreement and Plan of Merger with Omni Cable (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Houston Wire's stockholders will receive $5.30 in cash in exchange for each share of Houston Wire common stock they own (the "Merger Consideration").

3. On April 21, 2021, in order to convince Houston Wire's public common stockholders to vote in favor of the merger, the Board authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the SEC. The Proxy contains material omissions concerning: (i) the financial projections for Houston Wire, (ii) the valuation analyses performed by the Company's financial advisor, Johnson Rice & Company, LLC ("Johnson Rice"); (iii) the conflicts and compensation, as well as the financial analyses prepared by the Company's other financial advisor, William Blair & Company, LLC ("William Blair") for its role in the Proposed Transaction; and (iv) the post-merger leadership structure.

4. The shareholder vote ("Shareholder Vote") will be scheduled in the coming weeks as the transaction is expected to close following HWCC's Annual Meeting of Stockholders, scheduled for May 25, 2021. It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's stockholders prior to the Shareholder Vote so they can properly determine whether to vote for or against the Proposed Transaction.

5. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and Delaware State law. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Houston Wire's public common stockholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from

the Defendants' misconduct.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

9. This Court also has jurisdiction over the duty of candor claim pursuant to 28 U.S.C. § 1367.

10. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

11. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company's financial and legal advisors are headquartered in this District, and its stock trades on the Nasdaq which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

12. Plaintiff has maintained shares of Houston Wire common stock at all relevant times.

13. Defendant Houston Wire & Cable Company is incorporated under the laws of Delaware with its principal executive offices located at 10201 North Loop East, Houston, Texas 77029. The Company's common stock trades on the Nasdaq under the ticker symbol "HWCC".

14. Individual Defendant G. Gary Yetman is, and has been at all relevant times, the Chairman of the Board.

15. Individual Defendant James L. Pokluda III is, and has been at all relevant times, President, Chief Executive Officer, and a director of the Company.

16. Individual Defendant Roy W. Haley is, and has been at all relevant times, a director of Houston Wire.

17. Individual Defendant Margaret S. Laird is, and has been at all relevant times, a director of Houston Wire.

18. Individual Defendant William H. Sheffield is, and has been at all relevant times, a director of Houston Wire.

19. Individual Defendant Sandford W. Rote is, and has been at all relevant times, a director of Houston Wire.

20. Individual Defendant David Nierenberg is, and has been at all relevant times, a director of Houston Wire.

21. The defendants identified in paragraphs 14 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Houston Wire, the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. <u>Background of the Proposed Transaction</u>

22. Houston Wire distributes industrial fasteners in the United States. Houston Wire & Cable Company was founded in 1975 and is headquartered in Houston, Texas.

23. Omni Cable is a premier redistributor of wire and cable, electrical products, and value-added services.

24. On March 25, 2020, Houston Wire authorized the announcement of the Proposed Transaction. The press release stated in relevant part as follows:

**Houston Wire & Cable Company to be Acquired by OmniCable in $91 Million Transaction**

HOUSTON, Texas and WEST CHESTER, Pa., March 25, 2021 (GLOBE NEWSWIRE) -- Houston Wire & Cable Company (NASDAQ: HWCC) (HWCC) and Omni Cable, LLC (OmniCable) today announced that they have entered into a definitive agreement under which OmniCable will acquire all outstanding shares of HWCC common stock for $5.30 per share in an all-cash transaction valued at $91 million. The price represents a premium of 39% to HWCC's unaffected closing price of $3.80 on March 24, 2021 and an 89% premium to the $2.81 average closing price for the preceding 12-month period. The transaction was unanimously approved by HWCC's Board of Directors. All HWCC directors and officers have agreed to vote their shares, including shares held by The D3 Family Funds, in favor of the transaction. Such shares currently represent approximately 19% of the issued and outstanding shares as of March 24, 2021.

OmniCable is a subsidiary of Dot Holdings Co, which is owned by Dot Family Holdings, owners and operators of Dot Foods, Inc., the largest food industry redistributor in North America.

The combined company results in a national wire and cable redistribution industry leader that will maximize OmniCable's and HWCC's highly complementary businesses, products and national footprint to better meet the needs of both companies' customers. The combined company also will continue HWCC's fastener redistribution business. Following the close of the transaction, each company will retain its own brands and its existing locations.

James L. Pokluda III, HWCC's President & CEO, commented, "HWCC, Vertex and OmniCable are highly respected suppliers in their respective markets serving electrical and industrial distributors throughout the U.S. and Canada. This merger

creates an outstanding combination of leading businesses that will be well positioned to provide increased value and customer service to its redistributor partners."

"The HWCC team shares our passion for customer service," said Jeff Siegfried, OmniCable founder and vice chairman. "Our shared central focus on redistribution, logistical expertise, and unyielding pursuit of perfection for our business partners will drive both businesses to enhance the value that we bring to the marketplace. We look forward to continued growth and the shared learning we know will come from this new relationship."

**Transaction Details**

Under the terms of the agreement, HWCC stockholders will receive $5.30 in cash for each share of common stock they own. In addition, each stock-based equity award outstanding under the Company's stock and deferred compensation plans will be cancelled in exchange for $5.30. No consideration will be paid for stock options, all of which have exercise prices above the merger price.

The agreement includes a 30-day "go-shop" period expiring on April 24, 2021, which permits HWCC's Board of Directors and advisors to solicit alternative acquisition proposals from third parties. HWCC will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and HWCC does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or is otherwise required.

The transaction is expected to close following HWCC's Annual Meeting of Stockholders, scheduled for May 25, 2021, subject to customary closing conditions, including approval by HWCC stockholders. Upon completion of the transaction, HWCC common stock will no longer be listed on any public market.

**Fourth Quarter and Full Year 2020 Financial Results**

Separately, later today HWCC intends to file its 2020 Annual Report on Form 10-K, which will contain its fourth quarter and full year 2020 financial results. The Form 10-K will be available on the "Investor Relations" section of the HWCC website, as well as from the SEC.

**Advisors**

William Blair & Company, L.L.C. and Johnson Rice & Company, L.L.C. are serving as financial advisors to HWCC, and Schiff Hardin LLP is serving as legal counsel. Lewis Rice LLP is serving as legal counsel to OmniCable.

25. The Proposed Transaction may inordinately compensate Omni Cable and reward the Individual Defendants, at the expense of the Company's common stockholders. Therefore, it is imperative that stockholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for stockholders to properly exercise their corporate suffrage rights and in order to cast an informed vote on the Proposed Transaction.

B. The Proxy Omits Certain Material Information

26. On April 21, 2021, Defendants authorized the filing of a materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for Houston Wire's stockholders to make an informed decision on how to vote their shares, in violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9.

27. ***First***, the Proxy omits information concerning Houston Wire's financial projections, while the Proxy identifies that the Defendants considered a High Case, Medium Case, and Low Case, the Proxy fails to identify the inputs and assumptions considered that lead to variances in the forecasts. This is a critical omission as the High Case reflects cash flows for the Company that are nearly double that of the Low Case. Furthermore, the High Case reflects performance at a level consistent with the 2021 budget, and so logically appears to be the most reasonably prepared. If the Company was facing certain headwinds that justify deviating from the High Case, then those headwinds should be disclosed as those headwinds would plainly be material to stockholders asked to vote to ratify the Proposed Transaction.

28. By example, if the Company was expecting a significant decrease in cash flows,

stockholders would be more apt to vote for the merger, and inversely the same holds true. By choosing any and all of the Company's projections, the Board has chosen to blindfold stockholders to fundamental valuation information, and instead, left stockholders out in the dark with only market data for guidance. This is not a game of poker where a player must conceal his unexposed cards, the object of a Proxy is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed—and so must be disclosed.

29. **Second**, the Proxy omits material information regarding the financial analyses performed by Johnson Rice.

30. With respect to Johnson Rice's *Selected Transactions Analysis*, the Proxy fails to disclose: (i) the closing dates of the transactions; and (ii) the total values of the transactions.

31. With respect to Johnson Rice's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the unlevered free cash flows used in the analysis and all underlying line items; (ii) the individual inputs and assumptions underlying the discount rates ranging from 7.5% to 10.3%; (iii) the terminal values of the Company; and (iv) Johnson Rice's basis for using a terminal multiple range of 7.6x to 9.6x.

32. With respect to Johnson Rice's *Relative Trading Analysis*, the Proxy fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

33. Fairness opinions are fundamental to the M&A process and is ultimately what stockholders rely upon in their determination to vote for or against a transaction. Unfortunately, fairness opinions are also vulnerable to manipulation, which is why it is of the utmost important that stockholders have analyses available—such as those omitted here—to determine whether those metrics are reasonable, or whether they were unreasonably selected in order to obtain a finding of fairness. In valuing transactions such as these, it becomes all the more critical. As one

highly respected professor explained in one of the most thorough law review articles regarding the fundamental flaws of fairness opinions, in a financial analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78. Therefore, in order for stockholders to determine how to vote they need access to the above information, and the omission of these metrics makes each financial analysis identified inherently misleading.

34. ***Third***, the Proxy omits material information regarding William Blair. Indeed, the Proxy completely omits what compensation the financial analyses performed by William Blair, as well as the compensation William Blair is expected to receive for its role in the Proposed Transaction. The Proxy further fails to disclose whether William Blair has performed past services for Omni Cable or its affiliates, and if so, the timing and nature of the services and the amount of compensation received by William Blair for providing the services. The omission of the above-referenced material information renders the Proxy false and misleading.

35. **_Fourth_**, the Proxy fails to accurately disclose the expected executive structure in the post-merger company. Houston Wire's stockholders have a clear and unambiguous interest in understanding how the interests of the Individual Defendants in the Proposed Transaction, as it affects how the Individual Defendants may have considered the Proposed Transaction. The failure to disclose this information, or clarify it such that it is not misleading, is a violation of the federal securities laws.

36. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision concerning whether to vote his shares, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violation of Section 14(a) of the Exchange Act)**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that Proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. The omission of information from a Proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

41. Defendants have issued the Proxy with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding the valuation analyses performed by Johnson Rice in support of its fairness opinion.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's stockholders although they could have done so without extraordinary effort.

43. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the Johnson Rice reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial

analyses, as well as the fairness opinions and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Johnson Rice's analyses in connection with their receipt of the fairness opinions, question the Johnson Rice as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

45. Houston Wire is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

46. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only

through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Houston Wire within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Houston Wire, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They

were thus directly involved in preparing this document.

51. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## COUNT III

**(Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure)**

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

55. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they sought shareholder

action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

57.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving and/or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public stockholders.

58.     The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

59.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Houston Wire prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 7, 2021                           **MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*